NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-183

COMMONWEALTH

vs.

JAMES SILVERS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was charged with one count of trafficking in more than one hundred and less than 200 grams of heroin and fentanyl (count one), G. L. c. 94C, § 32E (c), and one count of conspiracy to violate the drug laws (count two), G. L. c. 94C, § 40.  He was acquitted on count one and convicted on count two. He now appeals, arguing that an unobjected-to error in the prosecutor's closing requires reversal.  We affirm.

At trial, the Commonwealth relied on the testimony of a cooperating witness who testified pursuant to an agreement with the government.  This cooperating witness testified that on the date of the alleged events, he and the defendant had agreed to meet at a Park & Ride in Vermont and drive to Springfield,

Massachusetts to purchase heroin.  The cooperating witness planned to purchase the drugs with only his own funds, but he needed the defendant's help because the defendant had a connection with the dealer they were planning on purchasing from.  In exchange for taking the trip and having the connection with the dealer, the cooperating witness agreed to give the defendant some portion of the drugs they purchased.

The cooperating witness told the jury that on the morning in question he rented a car, picked up the defendant, and the two of them drove to Springfield.  Once they arrived at their destination, the cooperating witness handed the defendant $20,000; the defendant walked into the house they had parked at and returned roughly twenty minutes later carrying a blue duffel bag.  The cooperating witness and the defendant then began to drive home.

In contrast, the defendant testified that the cooperating witness had called him and asked for help on a plumbing job. Although the defendant was not a plumber, he was out of work at the time and thought it could be a good opportunity to make some money.  The defendant met the cooperating witness at a Park & Ride in Vermont, and they drove down to a home in Massachusetts. When they arrived, the defendant helped the cooperating witness by carrying tools out of the car and into the home and cutting a

hole in the ceiling so they could access a damaged pipe. The cooperating witness told the defendant he was going to a nearby convenience store and returned a half hour later. When he came back, the cooperating witness replaced the solder on one of the pipe joints and told the homeowner to contact another company to deal with the water damage caused by the plumbing issue. Both the defendant and the cooperating witness then carried the tools back to the car, and they began to drive home.

State police Trooper Anthony Lavigne testified that on the day in question, he saw the cooperating witness's car driving extremely close to another car and stopped the cooperating witness because of this. During this traffic stop, Trooper Lavigne asked the cooperating witness for the rental agreement for the car and discovered that the car's registration was expired. Trooper Lavigne intended to have the vehicle towed, as he was required to do for all unregistered motor vehicles, and in preparation for this, he conducted an inventory search of the car. During this inventory search, he found a cooler in the back seat that contained approximately one hundred bags of what he recognized as heroin or fentanyl. The cooperating witness told Trooper Lavigne that the cooler and the narcotics in it belonged to him. At this point, Trooper Lavigne arrested both the defendant and the cooperating witness. Additional cruisers

3

arrived at the scene, and another trooper found the blue duffel bag in the car, which contained what appeared to be over 10,000 bags of narcotics. These bags were later analyzed and found to contain over one hundred grams of fentanyl.

The defendant testified that, when they were stopped, he did not know that there was heroin in the car, and that he had not seen the blue duffel bag in the back seat of the car. Given the conflict between their versions of events, whether the defendant or the cooperating witness was credible was a central issue in the case.

In this appeal, the defendant raises a single argument: he argues that an unobjected-to portion of the prosecutor's closing was in error. The prosecutor said,

> "And the cooperation agreement, when weighing that testimony, what weight to give it, I would argue that the same motives that [the cooperating witness] would have to enter that cooperation agreement are the same motives that . . . the Defendant, would have had to lie to you all.

> "That was a lot of fentanyl. The consequences are serious. You've been instructed penalty is not on you. That is on the Judge. But there are serious consequences. That same motive to enter a cooperation agreement exists when he's testifying. Punishment is a reason to tell you a story that does not add up." [Tr.IV 96].

We agree with the defendant that this was error. Every defendant faces punishment. This therefore amounts to an argument that every defendant who chooses to exercise his right

to testify on his own behalf, rather than remaining silent, should not be found credible. Of course, comment on a defendant's exercise of their right not to testify is not permitted. Griffin v. California, 380 U.S. 609, 615 (1965); Commonwealth v. Johnson, 463 Mass. 95, 112 (2012). This is because such comments impose a "penalty . . . for exercising a constitutional privilege." Griffin, supra at 614. Likewise, it is not permissible to argue in closing that because a criminal defendant has chosen to exercise his constitutional right to testify in his own defense, see Commonwealth v. Waters, 399 Mass. 708, 716 (1978), he should not be believed.

Of course, because this claim of error is unpreserved, we must determine whether it created a substantial risk of a miscarriage of justice. Commonwealth v. Randolph, 438 Mass. 290, 294-295 (2002). Having reviewed both closings in full, we conclude it did not. The primary focus of the prosecutor's argument was the logic of the situation. The prosecutor argued that a homeowner in Springfield with a leaking ceiling likely would not hire a plumber, the cooperating witness, two hours away in Vermont who could not come until the next day; that a plumber (who had employees) would be unlikely to ask a wholly untrained person to assist him with a plumbing job; and that, if he did so, he likely would not leave him alone in the customer's

5

apartment for twenty minutes where he would not be able to do any of the work.

In light of this focus, we are persuaded that the argument based on the defendant wanting to avoid punishment did not materially influence the guilty verdict.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999) (explaining that this is test for determining whether there is substantial risk of miscarriage of justice).

Judgment affirmed.

By the Court (Rubin, Neyman & Tan, JJ.[1]),

*Paul Little*

Clerk

Entered:  August 19, 2025.

---

[1] The panelists are listed in order of seniority.